SHELBY COUNTY, Tennessee, For the Use and Benefit of the Shelby County Conservation Board, Petitioner-Appellee,

v.

Lena Mae Ricks ARMOUR et al., Defendants-Appellants, and Carl R. Harrell and wife, Lillian H. Harrell, Defendants-Appellants (two cases).

Court of Appeals of Tennessee, Western Section.

Nov. 15, 1971.

Certiorari Denied by Supreme Court March 6, 1972.

J. Alan Hanover, James B. Jalenak, Memphis, for defendants-appellants.

Hearn W. Tidwell, Memphis, for petitioner-appellee.

CARNEY, Presiding Judge.

Upon the trial below the Circuit Judge entered an order vesting title in Shelby County, Tennessee, for the use and benefit of the Shelby County Conservation Board to about 13 acres of land owned by the defendants, Lena Mae Ricks Armour, William H. Ricks, Harvey D. Ricks, Carl R. Harrell, and Lillian H. Harrell. The land condemned is part of a strip of land 350 feet wide stretching for a distance of approximately 8 miles along the north side of Loosahatchie River eastward from Austin Peay Highway in the northeastern portion of Shelby County, Tennessee. The total area being acquired by the County is approximately 340 acres most of which was acquired by purchase without condemnation. The Trial Judge allowed the defendants below an appeal from the order of taking and denied the petitioner, Shelby County, the right to take immediate possession of the property under T.C.A. Section 23–1529 et seq.

The Shelby County Conservation Board was created under the authority of T.C.A. Section 11–1101 et seq. The purposes of such boards are set out in Section 11–1101 which we copy as follows:

"11–1101. Purpose.—The purposes of this chapter are to create a county conservation board and to authorize counties to acquire, develop, maintain, and make available to the inhabitants of the county, public parks, preserves, parkways, playgrounds, recreational centers, county forests, wildlife areas and other conservation areas, and to promote and preserve the health and general welfare of the people, to encourage the orderly development and conservation of natural resources, and to cultivate good citizenship by providing adequate programs of public recreation."

In 1963 the Quarterly County Court of Shelby County approved a General Park Recreation and Conservation Plan submitted by the Memphis and Shelby County Planning Commission. From this plan we copy the following reference to greenbelts and parkways:

*"Greenbelts and Parkways*

The stream valleys and flood plains of Nonconnah Creek, Wolf River and Loosahatchie River offer excellent opportunities for natural open space preserves. The majority of these lands are subject to periodic flooding and extensive fill or levee work would be required to make the land usable for residential, industrial or associated uses. Though much of it could become usable by these methods, it is far more important to maintain most of this land in its present state, for two reasons: first, during times of high water, the water storage area is necessary; and, secondly, with intense urban development taking place it is necessary to preserve as much open space as is practicable."

In March, 1967, the Shelby County Conservation Board published a brochure entitled "Program Guidelines for Conservation, Shelby County, Tennessee."

The projects were grouped into five general categories as follows: (1) open space; (2) water; (3) highways; (4) recreation; (5) agriculture. Under open space the following projects were listed:

"1.  *Loosahatchie River Greenway*
 2.  Wolf River Greenway
 3.  Nonconnah River Greenway
 4.  Fletcher Creek Greenway
 5.  Horn Lake Creek Greenway
 6.  Big and Crooked Creeks Greenways
 7.  Greenways on major tributaries of the above named rivers
 8.  Mississippi River Greenway
 9.  City Island Riverfront Development
 10.  Presidents Island Greenway"

The petition for condemnation recited that it was necessary to condemn and acquire the fee in the land described in the petition and owned by the defendants as a part of the development of the Loosahatchie River Greenbelt. The suit was

brought by the County under authority of T.C.A. Sections 23–1501 et seq.

The defendants resisted the right of the County to take on the following grounds:

(1) That the real purpose of the condemnation was to acquire an easement for an electric power line for the Memphis Light, Gas and Water Division;

(2) that the land being taken was only a part of the land eventually to be acquired for the greenbelt and that therefore it was only a piecemeal taking resulting in a denial of due process of law for the defendants;

(3) that the land sought to be acquired was not suitable for a park;

(4) that the greenbelt project had not been approved by the Commissioner of Conservation as required by statute; and

(5) the resolution of the County Court authorizing acquisition of the greenbelt land did not provide for just compensation to appellants because the resolution limited the amount of funds which could be paid for the entire strip along the river.

On this appeal the landowners contend most earnestly that the real purpose of condemnation is not to acquire a greenbelt but to acquire a right-of-way for the Memphis Light, Gas & Water Division; that the County has no authority to condemn for a power line; and that the Light, Gas & Water Division must condemn in its own name for such purposes. The facts preponderate against this contention.

When the Conservation Board learned that the Memphis Light, Gas & Water Division was negotiating with landowners for the purchase of a 100-foot right-of-way paralleling the north boundary of Loosahatchie River for about 8 miles east of Austin Peay Highway and that the power lines when constructed would leave a strip of land approximately 250 feet wide between the power line and the north bank of Loosahatchie River, the Conservation Board determined that it would be in the public interest to initiate the first step in the Loosahatchie Greenway Program established in 1963. The plan decided upon was for the County to buy the entire strip and then sell to Memphis Light, Gas & Water Division an easement of 100 feet for its power lines. The Memphis Light, Gas & Water Division would be charged a proportion of the cost of the entire strip.

The strip encompassed about 340 acres of land and the estimated cost was approximately $140,000. The proposal was presented to the Quarterly County Court of Shelby County by the Shelby Conservation Board and approved by the Quarterly County Court. The Quarterly County Court authorized the Conservation Board to enter into a contract with the Memphis Light, Gas & Water Division whereby the water division would forego its plans to acquire the easement directly from the landowners as originally planned but would purchase the easement from the County after the County acquired title to the entire 340-acre strip. The County Court authorized the Board to acquire the land and appropriated a sum not to exceed $160,000 from capital improvement funds to defray the cost thereof. Title to most of the 340 acres has been acquired by the County by deed from the various landowners but the appellants refused to sell resulting in the present condemnation proceedings. By T.C.A. Section 11–1104(2) title to the land must be taken in the name of the County.

Under T.C.A. Section 11–1104(2) the Board is given authority to acquire, in the name of the County, real estate "in fee or with conditions." Also in T.C.A. Section 11–1104(8) the Board is authorized to let out and rent privileges in or upon any property under its control under such terms and conditions as are deemed by it to be in the public interest. Therefore, we hold that there is nothing in the law which requires the Conservation Board and/or the County to acquire fee simple title to property and nothing in the law which pre-

**820**

vents the Board with approval of the Quarterly County Court from encumbering property which it owns in fee with an easement to the Light, Gas & Water Division.

The long-range plan for the Loosahatchie Greenbelt provided for a strip 750 feet wide on either side of the river. The defendants contend that since the County is obtaining only 350 feet on one side of the river at the present time, the condemnation is invalid because there is no assurance when, if ever, the additional land will be acquired by the County. A study of the long-range program of the Shelby County Conservation Board indicates clearly that the entire program is to be accomplished piecemeal depending on circumstances including increases and shifts in population, changes in land use, and, of course, availability of funds to finance the program. The long-range program in its entirety encompasses costs probably totaling millions of dollars and can and should be done only as finances of the County permit after taking into consideration many factors including those mentioned above. Therefore, the objection that the greenbelt is being acquired piecemeal is without merit.

Further, the defendants contend that the condemnation should fail because the land taken is not suitable for a park. The land involved is subject to periodic overflows of the Loosahatchie River, part of it is cultivated, part of it is wild land. The Shelby County Conservation Board is not limited to acquiring land for parks. The greenbelt concept is broad and encompasses wildlife areas, forest areas, hiking trails, horseback trails, camping areas, etc.

The defendants also contend that the greenbelt project has not been approved by the Commissioner of Conservation as required by T.C.A. Section 11-1104(3). The original plan was approved in 1963 in writing by then Commissioner of Conservation, Mr. Don McSween. A representative of the Tennessee Department of Conservation testified at the trial that since the overall project had been approved by a prior administration, the Commissioner of Conservation did not require his specific approval of the acquisition of each separate parcel of land in conformity with the original project which had been approved. Therefore, we affirm the holding of the lower Court that the acquisition of the land in question had been approved by the State Commissioner of Conservation within the meaning of T.C.A. Section 11-1104(3).

Finally, the defendants-appellants contend that the defendants are not guaranteed full compensation for their property taken for public uses as guaranteed to them under the Constitution of Tennessee. The Honorable C. W. Baker, Chairman of the Quarterly County Court of Shelby County, testified that while the Quarterly County Court had appropriated only $160,000 for the payment of the entire cost of acquiring the 340 acres of land, if such amount proved insufficient, the Quarterly County Court would appropriate the funds necessary to complete the cost of the acquisition of the land.

The Quarterly County Court cannot limit its liability under a condemnation proceeding. The Circuit Court of Shelby County will adjudicate the value of the property condemned together with all incidental damages and give judgment therefor against Shelby County. Under T.C.A. Section 5-921 the County Court will be obligated to impose a tax to pay such judgment and upon failure so to do the Circuit Court, under the authority of T.C.A. Section 5-922, is authorized to issue a mandamus requiring the County justices so to do.

We will not presume that the Quarterly County Court will fail to do its duty. However, upon the remand of this cause as hereinafter provided the Circuit Court of Shelby County will enter an order requiring the Quarterly County Court of Shelby County by appropriate resolution to for-

mally approve the condemnation of the land in question and designate the source of funds from which the County will pay any judgment against the County over and above $4,380.00 and $1,480.00 deposited by the County under T.C.A. Sections 23–1528 and 23–1529. The County shall not be entitled to possession of the land being condemned herein and no trial shall be had on the value of the land and damages until copy of such resolution shall have been filed in the Circuit Court. If the Quarterly County Court shall fail or refuse to adopt such resolution, the order vesting title in the County shall be set aside.

In conclusion, we hold that the condemnation for the purposes of a greenbelt was for a county purpose within the meaning of T.C.A. Section 23–1501 and that, therefore, the County Court did have a right to take. The assignment of error of the defendants is respectfully overruled.

 The condemnor, Shelby County, has filed an assignment of error in which it is contended that His Honor the Trial Judge erred in denying the petitioner's motion for immediate possession and further erred in ordering a stay of the proceedings pending the appeal. The County did deposit $4,380.00 and $1,480.00 in the two cases as provided by T.C.A. Sections 23–1528 and 23–1529. There is no merit to either of these contentions. Condemnation proceedings are of a dual nature, the first part of which is the determination of the right to take. Until that determination is finally made the condemnor has no right to take possession of the property sought. Harper v. Trenton Housing Authority, 197 Tenn. 257, 271 S.W.2d 185; Stapleton v. State, 195 Tenn. 144, 258 S.W.2d 736. T.C.A. Section 23–1530 provides that the condemnor may take possession of the property only if the right to take is not litigated.

An order will be entered in this Court remanding the cause to the Circuit Court of Shelby County with instructions to the Circuit Court to enter a decree in accordance with this opinion. The costs of this appeal are taxed two-thirds against the defendant landowners and one-third against Shelby County. T.C.A. Section 20–1621. The costs in the lower Court will abide the judgment of the lower Court.

MATHERNE and NEARN, JJ., concur.